**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**April 10, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MICHAEL EUGENE LAMB, SR.,

Petitioner - Appellant,

v.

OKLAHOMA COUNTY DISTRICT
COURT; STATE OF OKLAHOMA,

Respondents - Appellees.

No. 06-6222
(D. Ct. No. 06-CV-45-W)
(W.D. Okla.)

---

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

---

Before **TACHA**, Chief Circuit Judge, **HARTZ**, and **TYMKOVICH**, Circuit
Judges.

---

After examining the briefs and the appellate record, this three-judge panel

has determined unanimously that oral argument would not be of material

assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th

Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Michael Lamb, an Oklahoma state prisoner proceeding pro se, seeks a

certificate of appealability ("COA") in order to challenge the District Court's

---

[*]This order is not binding precedent except under the doctrines of law of
the case, res judicata and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 (eff. Dec. 1, 2006) and 10th
Cir. R. 32.1 (eff. Jan. 1, 2007).

denial of his petition for federal habeas relief under 28 U.S.C. § 2254. We exercise jurisdiction pursuant to 28 U.S.C. § 1291. Because Mr. Lamb has failed to satisfy the standards for the issuance of a COA, we deny his request and dismiss the matter.

## I. BACKGROUND

Mr. Lamb was convicted on two counts of shooting with intent to kill under Oklahoma law. He appealed to the Oklahoma Court of Criminal Appeals ("OCCA"), asserting five claims: 1) the evidence presented at trial is insufficient to sustain his convictions; 2) the trial court allowed the introduction of improper testimony and photographs; 3) the prosecution made misstatements of law and fact; 4) his sentence is excessive; and 5) these trial errors amount to cumulative error. In a summary opinion, the OCCA affirmed the convictions, addressing each of Mr. Lamb's claims on the merits. Mr. Lamb then filed a petition for habeas relief in federal district court, requesting a reversal of his convictions or a modification of his sentence. *See* 28 U.S.C. § 2254. In a thorough report and recommendation, the magistrate judge reviewed each of Mr. Lamb's claims on the merits and recommended that the District Court deny his petition. After a de novo review of the record, the court adopted the magistrate's report and denied the petition. In a subsequent order, the court also rejected Mr. Lamb's request for a COA under 28 U.S.C. § 2253(c)(1). *See* Fed. R. App. P. 22(b)(1). Mr. Lamb now petitions this Court for a COA in order to challenge the District Court's

-2-

order denying his habeas petition.

## II. DISCUSSION

Before a state prisoner may appeal from a final order in a § 2254 habeas corpus proceeding, he must obtain a COA. 28 U.S.C. § 2253(c)(1)(A). A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make that showing, Mr. Lamb must demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotations omitted).

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), state court decisions resolving federal constitutional claims on the merits are entitled to deference. *See Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004) (holding that AEDPA's "deferential treatment of state court decisions [under 28 U.S.C. § 2254(d)] must be incorporated into our consideration of a habeas petitioner's request for a COA"). Specifically, when a state court has decided a petitioner's claims on the merits, we may grant relief only if the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2). Moreover, we may not hold

that a state court has unreasonably applied federal law "simply because we conclude in our independent judgment that the state court applied the law erroneously or incorrectly." *Welch v. Sirmons*, 451 F.3d 675, 682 (10th Cir. 2006) (quotation omitted). Rather, "we must be convinced that the [state court's] application [of federal law] was also objectively unreasonable." *Id.* (quotation omitted). When a state court issues a summary opinion, as in the case before us, we "focus on its result rather than any reasoning." *Stevens v. Ortiz*, 465 F.3d 1229, 1235 (10th Cir. 2006).

Although the OCCA did not refer to federal law in resolving each of Mr. Lamb's claims, it applied to each claim a state standard "equally or more favorable to [Mr. Lamb] relative to the federal standard." *Harris v. Poppell*, 411 F.3d 1189, 1196 (10th Cir. 2005). As a result, we treat the state court's adjudication of Mr. Lamb's federal constitutional claims as an adjudication on the merits and accord its decision AEDPA deference. *See id.* Mr. Lamb must therefore show that reasonable jurists could debate the District Court's application of AEDPA deference. In other words, he must demonstrate that reasonable jurists could debate whether the Oklahoma court's resolution of these claims was unreasonable or contrary to clearly established federal law. *See Dockins*, 374 F.3d at 937–38.

A.    Sufficiency of the Evidence

Mr. Lamb argues that the state presented insufficient evidence to establish

his "intent to kill" the two victims under Oklahoma law, Okla. Stat. tit. 21, § 652(A),[1] a violation of his due process rights. In a habeas proceeding, we review the sufficiency of the evidence "in the light most favorable to the prosecution" and ask whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We have recognized that "[t]his standard of review respects the jury's responsibility to weigh the evidence and to draw reasonable inferences from the testimony presented at trial." *Dockins*, 374 F.3d at 939 (citing *Jackson*, 443 U.S. at 319). In other words, it "impinges upon 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law." *Jackson*, 443 U.S. at 319.

Applying this standard, we conclude that a rational trier of fact could have found the requisite "intent to kill" beyond a reasonable doubt. Although Mr. Lamb testified that he shot the gun to "scare" men threatening both him and his son, the record contains sufficient evidence to satisfy the intent-to-kill element. In fact, Mr. Lamb admitted at trial that he intended to kill if necessary to defend himself or his son. Furthermore, to the extent Mr. Lamb is arguing that the state

---

[1]The statute states: "Every person who intentionally and wrongfully shoots another with or discharges any kind of firearm, with intent to kill any person . . . shall upon conviction be guilty of a felony punishable by imprisonment in the State Penitentiary not exceeding life." Okla. Stat. tit. 21, § 652(A)

failed to prove he did not act in self-defense (or in defense of his son),[2] this argument also fails. The record contains testimony by several individuals that supports the jury's finding that Mr. Lamb was not acting in defense of himself or his son. Witnesses testified, for example, that Mr. Lamb shot one of the victims in the back, that one of the victims ran away once he heard Mr. Lamb had a gun, and that neither victim had been involved in any altercation with Mr. Lamb or his son. In short, based on our review of the record, a rational fact-finder could have found Mr. Lamb guilty beyond a reasonable doubt on both counts of shooting with intent to kill. We therefore conclude that the OCCA's resolution of Mr. Lamb's evidentiary challenge was not contrary to or an unreasonable application of federal law, 28 U.S.C. § 2254(d)(1), or an unreasonable determination of the facts, 28 U.S.C. § 2254(d)(2). *See Dockins*, 374 F.3d at 939 (recognizing that this Court has yet to decide whether sufficiency of the evidence on habeas review presents a question of law or fact).

B. Admission of Photographs and Testimony

Mr. Lamb also contends that the admission of certain photographs and parts of the victims' testimony was more prejudicial than probative, improperly influencing the jury and resulting in an excessive sentence. Specifically, he asserts that his constitutional rights were violated by the admission of two

---

[2] Under state law, when the defendant adequately raises self-defense at trial, the burden shifts to the state to prove the defendant did not act in self-defense. *See Howell v. State*, 882 P.2d 1086, 1092 (Okla. Crim. App. 1994).

photographs (showing one of the victims in a hospital bed) and testimony from both victims regarding medical complications. Because he does not allege a violation of a specific constitutional right, he is entitled to habeas relief "only if the alleged error was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process." *Willingham v. Mullin*, 296 F.3d 917, 928 (10th Cir. 2002) (quotation omitted). Furthermore, we are mindful that "[f]ederal habeas review is not available to correct state law evidentiary errors; rather it is limited to violations of constitutional rights." *Thornburg v. Mullin*, 422 F.3d 1113, 1128–29 (10th Cir. 2005). We therefore review the OCCA's determination of this claim to determine whether its decision is a reasonable application of federal due process principles. In this context, this Court has held that federal due process "will be satisfied only if the probative value of [the challenged] evidence is . . . greatly outweighed by the prejudice flowing from its admission." *Welch*, 451 F.3d at 688 (quotation omitted) (alterations in original).

The OCCA determined that the photographs were relevant to proving the charged offense of shooting with intent to kill. In particular, the court noted that the photographs were relevant to showing the nature, extent, and location of the victim's gunshot wound and that they did not show any complications arising from the wound. Consequently, their probative value was not outweighed by their prejudicial effect. The District Court agreed that the photographs were not so

-7-

grossly prejudicial as to infect the trial with unfairness. And we agree. As the District Court noted, we have denied habeas relief in a factually similar case. *See Willingham*, 296 F.3d at 928–29 (rejecting petitioner's argument that victim's photographs entitled him to habeas relief when the OCCA had held that the photographs were relevant to the intent-to-kill element of the offense); *see also Thornburg*, 422 F.3d at 1128–29 (holding that OCCA's decision affirming trial court's admission of "disturbing" photographs of the victim was not contrary to or an unreasonable application of federal law); *Smallwood v. Gibson*, 191 F.3d 1257, 1274–75 (10th Cir. 1999) (holding that photographs did not render proceedings fundamentally unfair in light of their probative nature, the nature of the crime, and evidence of the defendant's guilt).

Similarly, the admission of testimony by both victims regarding their medical complications did not render the trial fundamentally unfair. Again, the OCCA concluded that the probative value of this evidence was not outweighed by the danger of prejudice, noting the testimony's relevance in proving that Mr. Lamb shot the victims with the requisite intent to kill. After reviewing this testimony, which included the victims' accounts of complications resulting from the gunshot wounds (namely, a "near coma" and paralysis), the District Court concluded that the admission of the testimony was not fundamentally unfair and the OCCA's determination was reasonable. Because the probative value of the testimony was not greatly outweighed by any prejudicial effect, we agree that the

-8-

OCCA's resolution of this claim was reasonable and in accordance with federal law. *See Payne v. Tennessee*, 501 U.S. 808, 819 (1991) ("[T]he assessment of harm caused by the defendant as a result of the crime charged has understandably been an important concern of the criminal law, both in determining the elements of the offense and in determining the appropriate punishment.").

Finally, to the extent Mr. Lamb argues that admission of this testimony violates Oklahoma law prohibiting the admission of "victim impact evidence" in "unenhanced, non-capital crimes," *see Perryman v. State*, 990 P.2d 900, 905 (Okla. Crim. App. 1999), his argument fails. The OCCA considered this argument and determined that the testimony did not constitute victim impact evidence under state law. Because this is a state law question, we may not consider it or question the OCCA's decision. *Manlove v. Tansy*, 981 F.2d 473, 478 (10th Cir. 1992).

C.      Prosecutorial Misconduct

Mr. Lamb also seeks to challenge his convictions on the ground that the prosecutor made misstatements regarding the law and the evidence during closing arguments. In particular, he identifies: 1) a statement that the jury should subject his credibility to more scrutiny than other witnesses because of his interest in the outcome of the trial; 2) factual misstatements regarding his conduct and his testimony; and 3) a statement implying that certain evidence had been withheld from the jury. The OCCA considered each of these statements and concluded

that, although the prosecutor's comments were improper in some instances, they did not affect the outcome of the trial. The District Court held that the OCCA's determination was a reasonable application of federal law.

Like the evidentiary claims discussed above, Mr. Lamb's claim concerning prosecutorial misconduct is properly characterized as a due process claim: "Where prosecutorial misconduct does not implicate a specific constitutional right, improper remarks require reversal of a state conviction only if the remarks so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Bland v. Sirmons*, 459 F.3d 999, 1024 (10th Cir. 2006) (quotation omitted). In applying this demanding standard, "not every improper or unfair remark made by a prosecutor will amount to a federal constitutional deprivation." *Tillman v. Cook*, 215 F.3d 1116, 1129 (10th Cir. 2000); *see also Darden v. Wainwright*, 477 U.S. 168, 181 (1986) ("[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned." (quotation omitted)); *Bland*, 459 F.3d at 1024 ("The ultimate question is whether the jury was able to fairly judge the evidence in light of the prosecutors' conduct."). To determine whether a prosecutor's improper statements violate a petitioner's due process rights, "we examine the entire proceeding, 'including the strength of the evidence against the petitioner, both as to guilt at that stage of the trial and as to moral culpability at the sentencing phase' as well as '[a]ny cautionary steps—such as instructions to the jury—offered by the court to counteract improper remarks.'"

*Id.* (quoting *Le v. Mullin*, 311 F.3d 1002, 1013 (10th Cir. 2002)) (alteration in original).

Although our review of the record confirms that the prosecutor made improper remarks, the remarks do not rise to the level of a due process violation. The trial court immediately corrected any misstatements regarding Mr. Lamb's credibility and evidence not before the jury. *See Boyde v. California*, 494 U.S. 370, 384 (1990) ("Arguments of counsel which misstate the law are subject to objection and to correction by the court."). Moreover, the evidence of Mr. Lamb's guilt was substantial, and the jury was instructed to consider only witness testimony, attorneys' stipulations, and exhibits as evidence. *See Bland*, 459 F.3d at 1015 ("The jury is presumed to follow its instructions, even when there has been misleading argument." (internal citation omitted)). In light of the substantial evidence and the jury instructions, the prosecutor's misstatements concerning the evidence did not render the trial fundamentally unfair. *See Malicoat v. Mullin*, 426 F.3d 1241, 1256 (10th Cir. 2005) (concluding that improper statements by prosecutor did not violate defendant's due process rights in light of "the strength of the state's case and the fact that the majority of the prosecutor's argument was based upon evidence in the record"); *Hooper v. Mullin*, 314 F.3d 1162, 1173 (10th Cir. 2002) (concluding that prosecutor's improper comments regarding the evidence did not violate due process when the evidence was substantial and the trial court instructed the jury to base its decision only on the evidence).

Considering the prosecutor's statements in the context of the entire proceeding, we therefore conclude that they did not compromise the jury's ability "to fairly judge the evidence in light of the prosecutor's conduct." *Bland*, 459 F.3d at 1024. Reasonable jurists could not debate that the OCCA's determination that none of the prosecutor's remarks could have influenced the jury's verdict was a reasonable application of federal law. *Smallwood*, 191 F.3d at 1276 (holding that state court's decision was reasonable when "none of the prosecutor's comments were of sufficient magnitude to influence the jury's decision").

D. Excessive Sentence

Mr. Lamb also claims his concurrent sentences of 18 and 22 years are excessive and therefore violate the Eighth Amendment's Cruel and Unusual Punishments Clause. To determine whether a sentence violates the Eighth Amendment, we must determine whether the sentence is grossly disproportionate to the crime committed. *See United States v. Gurule*, 461 F.3d 1238, 1247 (10th Cir. 2006). In making this determination, we consider various factors, including the seriousness of the crime, the fit between the sentence and the crime, and the legislative determination of the appropriate sentence range. *Hawkins v. Hargett*, 200 F.3d 1279, 1284–85 (10th Cir. 1999). The OCCA determined that Mr. Lamb's sentence is well within the state statutory range for a single conviction of shooting with intent to kill. Given this determination and the seriousness of Mr. Lamb's crimes, the concurrent sentences are clearly proportionate to his crimes.

-12-

We therefore conclude that the OCCA's resolution of this claim was reasonable.

E.    Cumulative Error

Lastly, Mr. Lamb claims he is entitled to habeas relief on the basis of cumulative error.  Mr. Lamb notes that both the OCCA and the District Court identified specific "errors" made by the prosecutor at trial.  As we explain above, although the prosecutor made improper remarks, these remarks do not rise to the level of constitutional errors.  Consequently, because Mr. Lamb has not established a single constitutional error, he cannot logically argue that the aggregate of two or more constitutional errors entitles him to relief.  *See Parker v. Scott*, 394 F.3d 1302, 1327 (10th Cir. 2005) ("Because we find no single constitutional error, we also must reject [the petitioner's] argument that cumulative error resulted."); *Clayton v. Gibson*, 199 F.3d 1162, 1180 (10th Cir. 1999) (noting that a cumulative error argument "does not merit review given the lack of any discernible constitutional error").  Hence, we conclude that the OCCA's resolution of this claim was reasonable as well.

## CONCLUSION

Because we conclude that reasonable jurists would agree with the District Court's disposition of this matter, we deny Mr. Lamb's request for a COA and dismiss his appeal.  In addition, because Mr. Lamb has not advanced "a reasoned, nonfrivolous argument on the law and facts in support of the issues raised on appeal," *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 812 (10th Cir. 1997),

-13-

we likewise deny Mr. Lamb's request for permission to proceed on appeal *in forma pauperis*.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Circuit Judge